UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:04cr249-W |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | PRE-TRIAL ORDER |
| | ) | |
| PAUL JOHNSON, | ) | |
| | ) | |
| Defendant | ) | |

FOR PURPOSES OF AN ORDERLY AND FAIR TRIAL without causing unnecessary delay, the Court hereby issues this Pre-Trial Order.

1. The UNITED STATES will provide Jencks Act (18 U.S.C. § 3500) materials to the defendant **by 5:00 p.m., Tuesday, September 19, 2006**, unless the United States provides to the Court by 5:00 p.m., Monday, September 18, 2006, *ex parte* and under seal a compelling reason why Jencks Act material should not be presented to the Defendant until after the government witness has testified on direct examination.[1]

2. The DEFENDANT will provide to the United States **by 5:00 p.m., Wednesday, September 13, 2006**, all information required under the Federal Rules of Criminal Procedure regarding an alibi defense (Fed. R. Crim. Proc. 12.1), an insanity defense (Fed. R. Crim. Proc. 12.2), and/or a public-authority defense (Fed. R. Crim. Proc. 12.3).

---

[1]The Jencks Act does not require the United States to deliver witness statements or reports "until [a] witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Nonetheless, delivering Jencks Act materials to the defendant at this late time and date unnecessarily delays a trial while defense counsel reviews the materials. Early delivery of Jencks materials provides for efficient and orderly use of the court's and jurors' time.

3. Finally, although trial does not commence in this case until September 20, 2006,[2] the jury for this case was selected on September 6, 2006, the day the jury pool was summonsed to report. As part of the record of this proceeding, the Court takes judicial notice of the fact that Juror Number Six is an African-American female.

Said juror was randomly selected from the jury pool by the Deputy Clerk to fill a vacancy of another potential juror who had been peremptorily stricken. Neither the United States nor the Defendant chose to strike Juror Number Six so, subject to illness or other excusable cause, she will serve on this jury when it is empaneled on September 20 at commencement of trial. The race and gender of Juror Number Six are relevant to this proceeding because, before Juror Number Six was called by the Deputy Clerk to serve as a juror, Defendant raised a *Batson v. Kentucky*[3] challenge against the United States for striking another African-American female.

The United States articulated two neutral reasons for striking that other potential juror: (1) that a relative of the potential juror was convicted of a drug trafficking offense, and (2) that the potential juror was a teacher, and the government attorney believed academics (and those in the academic community whether or not they actually teach) would philosophically be less likely to follow the evidence and law. The Court accepted those as neutral reasons.[4] The Court also

---

[2] Defendant sought a continuance of this trial until January, 2007, because the father of the Defendant's private investigator (who is also a defense witness) is gravely ill. While the Court denied the continuance until January, 2007, the Court did delay this trial by two weeks to reasonably accommodate the private investigator's family situation.

[3] 476 U.S. 79 (1986)(equal protection clause forbids prosecutors from challenging potential jurors solely on account of their race or on the assumption that jurors of a certain race will be unable to impartially consider the government's case against a defendant of that race).

[4] *United States v. Barnette*, 211 F.3d 803, 812 (4th Cir. 2000)(a *Batson* challenge is a three step process: (1) the defendant must make a *prima facie* case that the peremptory challenge was based on purposeful discrimination, (2) the burden shifts to the government to produce a race neutral explanation for the strike, and (3) the trial court then has the duty of deciding whether the

found that there was no pattern of striking jurors based on race and/or gender. *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir. 1989)(in deciding whether there was purposeful discrimination, the court may consider whether there was a "pattern" to the striking of minority jurors). The fact that, subsequent to the United States striking the first African-American female and Defendant's *Batson* challenge, the United States **did not** strike Juror Number Six further supports the Court's earlier finding that there was no "pattern" of the United States striking jurors based on race or gender. *Id.*

Furthermore, the fact that Juror Number Six remained on the jury as an African-American female is "significant" in and of itself, insuring there is diversity on the jury, especially since the government had five peremptory strikes left when the government chose to leave Juror Number Six on the jury. *Id*. (the fact that the government had strikes available to use against other African-American jurors but chose not to use any of those remaining strikes is relevant factor in considering whether there was purposeful discrimination).[5]

Signed: September 8, 2006

Frank D. Whitney
United States District Judge

---

defendant has carried his burden and proved purposeful determination).

[5]Defendant also raised a second *Batson* challenge against the government's peremptorily striking a Caucasian female, asserting the government struck the potential juror based solely on her gender. The government stated a neutral reason for striking this potential juror -- that she was in the academic community, serving as a registrar for a local college, and the government had already stated its concerns with members of the academic community. The Court also noted that at least nine females already had been seated as jurors or alternate jurors, so there obviously was no pattern of striking jurors based on their female gender.